UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 8678 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | Hon. Marvin E. Aspen |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Aaron Marshall ("Marshall") filed a complaint alleging constitutional violations

consisting of failures to provide adequate medical care during his incarceration at Pickneyville

Correctional Center ("PCC") against Wexford Health Sources, Inc. ("Wexford"), John Doe

Correctional Officers, and John Doe Dentists at both PCC and Stateville Correctional Center.

On February 10, 2014, Wexford filed a motion to transfer venue to the Southern District of

Illinois pursuant to 28 U.S.C. § 1404(a).  For the reasons discussed below, we grant Wexford's

motion to transfer this action to the United States District Court for the Southern District of

Illinois.

**BACKGROUND**

Marshall is a former inmate of the Illinois Department of Corrections ("IDOC").

(Compl. ¶ 8.)  Wexford is a Pennsylvania corporation that provides medical and dental care

services to IDOC inmates.  (*Id*. ¶ 3.)  Between mid-August and September 9, 2013, Marshall

complained of a toothache and infection to John Doe Correctional Officers and John Doe

Dentists at Stateville Correctional Center.  (*Id*. ¶¶ 9–10.)  On about September 9 or 10, 2013, he

1

was transferred to PCC, where he continued to complain of the toothache and infection.  (*Id.* ¶¶ 9, 11.)  On September 18, 2013, Marshall fell into a coma at PCC and was transferred to Memorial Hospital of Carbondale for immediate treatment.  (*Id.* ¶¶ 14, 16.)  While at Memorial Hospital, he remained in a coma for nine days and underwent several surgeries.  (*Id.* ¶¶ 15–16.)  After his initial treatment at Memorial Hospital, Marshall was transferred to Kindred Hospital in Chicago, Illinois.  (*Id.* ¶ 16.)  Marshall is no longer in IDOC custody and resides in Chicago, where he continues to receive ongoing medical treatment for his injuries sustained at PCC.  (*Id.* ¶ 2, Resp. at 2.)

### ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice, a court may transfer any civil matter to another district where venue is proper.  The moving party must show that: (1) venue is proper in the district where the action was originally filed; (2) venue would be proper in the transferee court; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice.  *See Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n,* 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007).

The parties do not dispute that venue is proper in either the Northern District of Illinois or the Southern District of Illinois.  (Resp. at 3–4).  Venue is proper for a civil action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Marshall presumes that the defendants John Doe Correctional Officers and John Doe Dentists, who are employed at the Stateville Correctional Center in the Northern District, also reside in the district in which they work.  (Compl. ¶ 10; Resp. at 1–2.)

In dispute is whether the transfer to the Southern District of Illinois will serve the convenience of the parties and witnesses as well as the interests of justice. As the Seventh Circuit has recognized, deciding whether to transfer a case requires "flexible and individualized analysis" based on the circumstances of a particular case. *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted). The district court determines the weight given to each factor and has wide discretion in deciding whether transfer is appropriate. *Tice v. American Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1988); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The plaintiff's choice of forum is usually favored "unless the balance is strongly in favor of the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). As the party seeking transfer, Wexford has the burden to show that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (internal citations omitted). With these standards in mind, we address each of the factors.

### A.      Convenience (or Private) Factors

In deciding whether transfer would promote convenience, courts consider such private interest factors as: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses." *Morton Grove Pharm.,* 525 F. Supp. 2d at 1044 (citing *Schwartz v. Nat'l Van Lines, Inc.,* 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004)); *see also Amoco Oil Co. v. Mobil Oil Corp.,* 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). We evaluate each factor in turn.

### 1.  *Plaintiff's Choice of Forum and the Situs of Material Events*

The plaintiff's choice of forum "should rarely be disturbed." *In re Nat'l Presto Indus., Inc.,* 347 F.3d at 664 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S. Ct. 839, 843

3

(1947)); *Amoco Oil Co.,* 90 F. Supp. 2d at 960.  Courts in this district have held, however, that if

the "events giving rise to the cause of action did not take place in the plaintiff's selected forum,

the 'plaintiff's preference has minimal value.'"  *Dunn v. Soo Line R. Co.,* 864 F. Supp. 64, 65

(N.D. Ill. 1994) (quoting *Robinson v. Town of Madison,* 752 F. Supp. 842, 847 (N.D. Ill. 1990));

*see also Metzger v. Sleece Co., Inc.,* 09 C 6071, 2010 WL 563073, at *2 (N.D. Ill. Feb. 12,

2010).

The material events giving rise to the present action include the alleged misconduct of

John Doe Dentists and John Doe Correctional Officers at PCC, which allegedly led to Marshall

falling into a coma while in the custody of the IDOC at PCC on September 18, 2013.  (Compl.

¶¶ 11–14.)  Marshall received immediate medical treatment, including several surgeries, at

Memorial Hospital of Carbondale in Carbondale, Illinois.  (*Id.* ¶ 16.)  Although Marshall notes

that he continued to receive medical treatment at facilities within the Northern District, the

central events giving rise to his claim occurred at PCC and Memorial Hospital.  These central

events indisputably took place entirely within the jurisdiction of the Southern District of Illinois.

Accordingly, Marshall's choice of the Northern District of Illinois as the forum for this action

has minimal weight in our analysis, while the situs of material events factor weighs heavily in

favor of transfer.

### 2.  Access to Sources of Proof

The next convenience factor concerns the relative ease of access to evidence.  Marshall

does not dispute that records concerning his incarceration and medical treatment at PCC and

Memorial Hospital of Carbondale are located in the Southern District.  (*See* Mot. Trans. ¶ 24.)

Nonetheless, this factor is neutral, as "documents and records are easily transportable . . . and

their location generally is not a persuasive reason for transfer."  *Simonoff v. Kaplan,* No. 09 C

5017*, 2010 WL 1195855, at \*2 (N.D. Ill. Mar. 17, 2010) (citing *Morton Grove Pharm., 525 F. Supp. 2d at 1045–46).

### 3. *Convenience of the Parties*

Next we evaluate the convenience of the parties in this action.  In doing so, we consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum."  *Genocide Victims of Krajina v. L–3 Services, Inc.,* 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011); *Body Science LLC v. Boston Scientific Corp.,* 846 F. Supp. 2d 980, 996 (N.D. Ill. 2012) (citing *Hanley v. Omarc, Inc.,* 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998)).  As the moving party, Wexford has the burden of showing that "the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Continental Cas. Co. v. Staffing Concepts, Inc.,* No. 06 C 5473, 2009 WL 3055374, at \*5 (N.D. Ill. Sept. 18, 2009); *First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 912–13 (N.D. Ill. 2006).

As Marshall is no longer in the custody of the IDOC, and is instead living in Chicago, the Southern District is presumably a less convenient venue for him.  (Resp. Mot. at 2.)  He claims that litigation in the Southern District would impose a significant financial and physical hardship upon him, given his limited financial means and serious health issues.[1]  (*Id*. at 3.)  Wexford asserts that it is more convenient to litigate in the Southern District, as it is likely that Defendants John Doe Dentists and John Doe Correctional Officers, employed at PCC, live in or near the Southern District.  (Mot. at 5.)  Nonetheless, Wexford has not demonstrated that transfer would not significantly inconvenience Marshall, nor does Wexford challenge Marshall's claims of

---

[1] Marshall mentions that he suffered from a serious immune deficiency disease at the time of his injury at PCC and continues to suffer from medical problems arising out of that injury.  (Compl. ¶¶ 12, 19.)  The parties do not elaborate upon or dispute Marshall's health issues, and we are unable to evaluate the extent of such issues at this stage.

financial and physical hardship that would make his travel downstate for trial burdensome. As such, this factor does not weigh in favor of transfer.

### 4. Convenience of Witnesses

The last of the convenience factors is the convenience of witnesses, which "is often viewed as 'the most important factor in the transfer analysis.'" *Preussag Int'l Steel Corp. v. Ideal Steel & Builders' Supplies, Inc.,* No. 03 C 6643, 2004 WL 783102, at *5 (N.D. Ill. Jan. 21, 2004) (quoting *Tingstol Co. v. Rainbow Sales Inc.,* 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998)); *First Nat'l Bank,* 447 F. Supp. 2d at 913. A party moving for transfer must show that the original forum is "clearly less convenient for its witnesses." *Aldridge v. Forest River, Inc.,* 436 F. Supp. 2d 959, 962 (N.D. Ill. 2006). In weighing this factor, courts should "assess the location of potential witnesses, the nature of their expected testimony, and whether certain witnesses may be compelled to testify." *Eugene v. McDonald's Corp.,* No. 96 C 1469, 1996 WL 411444, at *2 (N.D. Ill. July 18, 1996) (citing *Canade v. Grumman Corp.*, No. 93 C 6628, 1994 WL 87307, at *2 (N.D. Ill. Mar. 16, 1994)). For the court to make such assessments, the party seeking transfer should name potential key witnesses and provide a general statement of the witnesses' expected testimony. *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1167–68 (N.D. Ill. 1995) (citing *Heller Fin., Inc.,* 883 F.2d at 1293)); *JDA eHealth Sys., Inc. v. Chapin Revenue Cycle Mgmt., LLC,* No. 10 C 7781, 2011 WL 2518938, at *10 (N.D. Ill. June 23, 2011).

In addition, "[t]he convenience of party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily." *Gueorguiev v. Max Rave, LLC,* 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007). "As a practical matter, it is usually assumed that witnesses within the control of the parties will appear voluntarily." *Am. Family Ins. v. Wal-Mart Stores, Inc.,* No. 02 C 8017, 2003 WL 1895390, at *2 (N.D. Ill. Apr. 17, 2003);

*see Childress v. Ford Motor Co.,* 03 C 3656, 2003 WL 23518380, at \*4 (N.D. Ill. Dec. 17, 2003)

(explaining that "it is reasonable to conclude that [a family member] is more likely to attend trial

than the non-party . . . witnesses who are neither blood relatives of Plaintiffs or employees of

Defendant").  Additionally, "the convenience of expert witnesses is irrelevant in determining the

propriety of transfer . . . since it may be presumed that witnesses who are paid to testify will

appear at trial irrespective of the location of the forum." *Newton v. Thomason*, No. 91 C 6322,

1991 WL 281194, at \*2 (N.D. Ill. Dec. 30, 1991) (quoting *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.

Supp. 1279, 1286 (N.D. Ill. 1980)).  For these reasons, "[m]ore weight is afforded non-party

witnesses." *First Nat'l Bank,* 447 F. Supp. 2d at 913.

Marshall identified post-coma treating physicians at Kindred Hospital in Chicago and

other Cook County doctors as non-party witnesses residing in the Northern District.  (Resp. at 2,

5.)  He also indicated that he anticipates retaining one or more expert medical witnesses and

expects that these witnesses will reside in the Northern District of Illinois.  (*Id*. at 2.)  Marshall's

remaining potential witnesses include his eight sisters, girlfriend, and three nieces.  (*Id.*)

Marshall's witness list thus consists primarily of the types of witnesses who either must or would

voluntarily appear to testify.  *Childress,* 2003 WL 23518380, at \*4.

Wexford argues, however, that while Marshall received follow-up treatment at Kindred

Hospital in Chicago, "he received care during the most critical stages of his alleged medical

condition, namely, being in a coma for 9 days, at PCC and Memorial Hospital, which are located

in the Southern District."  (Mot. at 7.)  Wexford explains that the testimony of Marshall's

treating physicians at Memorial Hospital of Carbondale in the Southern District will be most

crucial in litigating this action, as they possess "relevant information as it pertains to liability

because they were presumably in direct contact with [Marshall] immediately prior to and during

his coma." (Reply at 2.)

On the whole, we are persuaded that it would be more inconvenient for the witnesses

from the Southern District to appear in federal court in the Northern District than vice versa.

Wexford's briefs stress that non-party witnesses from Memorial Hospital, who possess

information pertinent to Plaintiff's liability, have no ties to Marshall or his family such that their

personal interest in testifying might outweigh their inconvenience. Additionally, these non-party

witnesses fall outside of our 100-mile radius subpoena power.[2]  Fed. R. Civ. P. 45(c). In light of

the above, we conclude that this factor weighs in favor of transfer.

> **B.      Interest of Justice (or Public) Factors**

Relevant interest of justice factors under the transfer statute include: "docket congestion

and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative

familiarity with the relevant law, . . . the respective desirability of resolving controversies in each

locale, . . . and the relationship of each community to the controversy[.]" *Research Automation*,

626 F.3d at 978 (internal citations omitted). The interest of justice may be determinative,

warranting transfer or its denial, even where the convenience of the parties and witnesses points

toward the opposite result. *Id.* (citing *Coffey*, 796 F.2d at 220–221). With these principles in

mind, we turn to the present motion.

> ### 1.   *Familiarity with Applicable Law*

In this case, each court's relative familiarity with applicable law does not weigh in favor

of or against transfer. Neither party disputes that both districts are equally familiar with the

---

[2] Memorial Hospital of Carbondale, for example, is over three hundred miles from Chicago.

applicable law for § 1983 claims.  (Mot. at 6, Resp. at 5–6.)  Because judges in both districts are

equally competent to preside over these questions, this factor is irrelevant to our analysis.

### 2.  *Speedy Case Resolution*

The second public factor concerns the likelihood that a litigant will receive a speedy trial

in the interest of justice.  *Coffey*, 796 F.2d at 221.  "Of the numerous court management statistics

available, two statistics—the median number of months from filing to disposition of civil cases,

and the median number of months from issue to trial in civil cases—bear the most relevance to

this analysis."  *Vandeveld*, 877 F. Supp. at 1169; *see Pepsico, Inc. v. Marion Pepsi-Cola Bottling*

*Co.*, 99 C 3939, 2000 WL 263973, at *11 (N.D. Ill. Mar. 6, 2000) ("Because the average number

of trials from filing to disposition is shorter in the Northern District, and the median time for the

duration of a trial is shorter in the Southern District, this factor does not weigh in favor of either

district.").  According to recent Federal Court Management Statistics, the time from filing a case

to trial is 33.1 months in the Northern District and is 27.3 months in the Southern District of

Illinois.[3]  The time from filing to disposition in civil cases is 6.8 months in the Northern District

and is 18.6 months in the Southern District.  While these figures suggest that the Southern

District has a higher prospect for an earlier trial, the interest in a speedy disposition overall may

favor the Northern District of Illinois.

### 3.  *Relationship of Communities to Litigation and Desirability of Resolving Case in Each Locale*

Finally, we evaluate the Northern and Southern Districts' respective interests in resolving

this controversy.  "Resolving litigated controversies in their locale is a desirable goal of federal

---

[3] *Comparison of Districts Within the Seventh Circuit – 12-Month Period Ending December 31, 2013*, Federal Court Management Statistics, last visited May 29, 2014, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/comparison-districts-within-circuit-december-2013.pdf&page=7.

courts." *First Nat'l Bank,* 447 F. Supp. 2d at 914.  Wexford argues that the Southern District has the closest relationship to this controversy, as:

> [Marshall] was an inmate at PCC located in the Southern District during the relevant time period[,] . . . Defendants, John Doe Correctional Officers and John Doe Dentists, are employed at PCC[,] [Marshall] fell into a coma while incarcerated at PCC[,] he was thereafter taken to Memorial Hospital of Carbondale in Carbondale, Illinois . . . where he remained in a coma for 9 days. . . [and] during which time he was examined, treated, and received "several surgeries."

(Mot. at 5 (internal citations omitted).)

Although Marshall argues that both Districts have an interest in the controversy, he fails to effectively articulate the Northern District's interest, merely noting that the site where the alleged misconduct began, specifically Stateville Correctional Center, lies within the Northern District.  (Resp. at 6.)  While the Northern District has an interest in litigating disputes that involve alleged misconduct at correctional facilities within its jurisdiction, the central events that gave rise to Marshall's claim arose in the Southern District.  This factor weighs significantly in favor of transfer.

## C.    Summary of Balance

After analyzing all of the factors for transfer under 28 U.S.C. § 1404(a), we hold that the balance warrants transfer of this action to the Southern District of Illinois.  Although Marshall's financial and physical hardship suggest that transfer would impose a significant inconvenience upon him as the Plaintiff in this action, the convenience to the non-party witnesses as well as the interests of justice weigh significantly in favor of transfer.

## CONCLUSION

For the reasons stated above, this case is hereby transferred to the Southern District of

Illinois.  It is so ordered.


United States District Judge

Dated:       Chicago, Illinois
             June 5, 2014